

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00026-CV

---

ROBERT SALINAS, APPELLANT

V.

METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P., ET AL.,
APPELLEES

---

On Appeal from the 407th District Court
Bexar County, Texas
Trial Court No. 2017-CI-23765

---

August 13, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Robert Salinas (Salinas) appeals from a summary judgment denying him recovery against Dr. Sarah Weakley (Weakley), Methodist Healthcare System of San Antonio, LTD., L.L.P., (Methodist), Tiffanny Marie Isaac, Wanda Le Grange, Chantel Dunk, and Kathryn Vierzba (the nurses/techs). He sued Weakley, Methodist, and the nurses/techs for medical malpractice because they left a sponge inside him upon completing surgery. Each defendant moved for summary judgment, contending that the two-year limitations period had expired. No one disputes that suit was initiated more than two years after the

alleged malpractice occurred but within the tolling period established by statute. The dispute lies in whether Salinas complied with the applicable statute and triggered the tolling period. The trial court concluded that he did not and granted the summary judgment motions. Salinas appealed. We affirm.[1]

*Standard of Review and Law*

The standard of review we follow is that discussed in *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017), and *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We refer the parties to those cases for a discussion of it.

Next, the chose-in-action underlying Salinas' suit is a health care liability claim. Such claims have a two-year limitations period. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (West 2017). A claimant, however, can toll the expiration of that period for 75 days by complying with certain notice requirements. *Id.* § 74.051(c).

Per § 74.051(c) of the Civil Practice and Remedies Code, the period is tolled 75 days when notice is "given as provided" in § 74.051(a). *Id.* The latter states:

> [a]ny person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

---

[1]Because this appeal was transferred from the Fourth Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Id.* § 74.051(a).  Mailing both notice and the authorization form are prerequisites to tolling, according to our Supreme Court.  *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 74 (Tex. 2011).

Next, statute dictates the content of the authorization form.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c) (West Supp. 2018).  Though the statute specifying the content of the authorization form was amended after Salinas underwent the surgery in question, the amendments took immediate effect on June 9, 2017.  *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 867, *amended by* Act of June 9, 2017, 85th Leg., R.S., ch. 506, § 1, 2017 Tex. Gen. Laws 1336 (eff. June 9, 2017). Nonetheless, the changes are of little import here.  Each statute required Salinas to undertake the same particular acts which are determinative here.  Those acts consisted of identifying health care providers encompassed within the medical authorization form. The physicians and health care providers which had (and have) to be identified are 1) those "who have  examined, evaluated, or treated [Salinas] in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health Care Claim," *id.* § 74.052(c)(B)(1), 2) those "who have examined, evaluated, or treated [Salinas] during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim," *id.* § 74.052(c)(B)(2), and 3) those excluded from the medical authorization since their information is irrelevant.  *Id.* § 74.052(c)(C)(1).  The statutory form itself separates these three categories of people and entities into different paragraphs.

*Application of the Standard of Review and Law*

The summary judgment record at bar contains several affidavits executed by Salinas' attorney and that attorney's assistant. The assistant attested to how she mailed the requisite notice accompanied by the mandatory authorization form. Copies of the notice and form purportedly mailed were attached to her affidavit. Within the two paragraphs of the form pertaining to the records of physicians and health care providers who examined or treated him in connection with the injuries underlying the suit, and who examined and treated him in general over the preceding five years appears the notation "(Please see attached list)." Only one list was attached. Labelled "LIST OF PROVIDERS 5 YEARS PRIOR TO INCIDENT THROUGH PRESENT," it contained the names, addresses and phone numbers of 1) "Methodist Hospital[,] Methodist Specialty and Transplant Hospital," 2) "General Surgery Associates – Sarah Weakley, MD," 3) "Christus Physician Group – Veronica Betancur, MD," and 4) "Christus Santa Rosa Wound Care & Hyperbaric Center – Ricardo Aguilar, MD." Whether these four named individuals and entities were the health care provides who treated him in connection with the injuries he purportedly sustained as a result of malpractice or the health care providers who simply examined him during a period five years prior to the incident went unspecified.

The foregoing absence of delineation is immaterial in Salinas' view. He suggests that "[t]here was no need for segregation in this case because the providers identified on the list were all treaters involved in the surgeries at issue and were the only providers Mr. Salinas saw in the preceding five years." This argument is unavailing for several reasons.

First, the definition of "health care provider" encompasses "any person, partnership, professional association, corporation, facility, or institution duly licensed,

4

certified, registered, or chartered by the State of Texas to provide health care, including . . . a registered nurse . . . ." TEX. CIV. PRAC. & REM CODE. ANN. § 74.001(a)(12(A)(i). Furthermore, the phrase "health care providers" appears in both the categories of people who treated him for the injuries in question and those who treated him generally for the preceding five years. Within the group of defendants he sued were two nurses (i.e., Dunk and Vierzba) who purportedly assisted in his treatment (i.e., the surgical procedure from which sprang his suit). As nurses, Dunk and Vierzba were health care providers too, given the statutory definition of the term. Yet, Salinas omitted their names from his "LIST OF PROVIDERS 5 YEARS PRIOR TO INCIDENT THROUGH PRESENT." At the very least, his having failed to identify at least two, if not more, health care providers who assisted in his treatment in connection with the injuries underlying his claim meant that the list accompanying his notice failed to comply with § 74.052(c)(B)(1).[2] A claimant's complete failure to provide an authorization form prescribed by § 74.052 precludes tolling. *Carreras*, 339 S.W.3d at 74; *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 552 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The same is true of providing an incomplete authorization form or one omitting names of providers required to be included. *Walthour v. Advanced Dermatology*, No. 14-17-00332-CV, 2018 Tex. App. LEXIS 2497, at *7-8 (Tex. App.—Houston [14th Dist.] Apr. 10, 2018, no pet.) (mem. op.); *Davenport*, 526 S.W.3d at 552-54; *Johnson v. PHCC-Westwood Rehab. & Health Care Ctr.,* 501 S.W.3d 245, 251-52 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

---

[2]Also missing from the list were the names of two other defendants who assisted in his treatment during the surgery. They were the defendants he called the "scrub techs" in his petition, Issac and Le Grange. The record does not reveal whether "scrub techs" must be licensed, certified, or registered by the State, but assuming *arguendo* they are, then they too would be considered health care providers who treated him.

Second, and to reiterate, the legislature prescribed that the "medical authorization required by this section *shall* be in the following form . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 74.052(c) (emphasis added). It also specified elsewhere that the word "'shall' imposes a duty" unless the context in which the word appears "necessarily requires a different construction." Tex. Gov't Code Ann. § 311.016(2) (West 2013). We do not read the context surrounding the word "shall" in § 74.052(c) as necessarily requiring the word to be read as anything short of mandatory. On occasion, some jurisdictions have said that there may be room for slight deviation from the notice directives imposed under chapter 74 given that "substantial compliance" with the statute may trigger tolling in certain circumstances. *See,* e.g., *Davenport,* 526 S.W.3d at 552-53. But "shall" is certainly not permissive or subject to being read as granting a claimant the discretion to comply, as would the word "may." Tex. Gov't Code Ann. § 311.016(1) (defining "may" as creating discretionary authority or granting permission or a power). Additionally, the form prescribed by the legislature expressly separates health care providers into distinct categories, as evinced by § 74.052(c)(B)(1), (2) and § 74.052(c)(C)(1). No doubt, segregating such providers into those categories can facilitate efficient investigation and settlement of a health care liability claim. If nothing else, it minimizes the likelihood of a claimant hiding pivotal witnesses since health care providers are to be identified as those that a defendant 1) should contact (e.g., § 74.052(c)(B)(1) or those who treated the patient in connection with the injuries), 2) may want to contact (e.g., § 74.052(c)(B)(2) or those who have treated or examined the patient generally within the preceding five years), and 3) need not bother (e.g., § 74.052(c)(C)(1) or those who have irrelevant information). And, after all, the purpose of affording statutory notice is to encourage negotiations and

6

settlement of disputes in a timely manner, prior to suit and with a minimization of expense. *Carreras,* 339 S.W.3d at 73. So, neglecting to segregate health care providers into the aforementioned categories "materially interfere[s] with the purposes chapter 74 is intended to accomplish." *Walthour*, 2018 Tex. App. LEXIS 2497, at \*8 (wherein the claimant failed to so segregate health care providers and supplied a list merely identifying "13 . . . 'Myra Walthour Medical providers in the past 5 years'").

Just as the lumping of some health care providers into one list and omitting others from disclosure was deemed insufficient to trigger tolling in *Walthour*, it was insufficient here, as well. *See id.* (also concluding that the circumstances fell short of compliance with § 74.052). Salinas did not comply with § 74.052, *in toto* or substantially, and his notice did not toll the two-year limitations period.

Having had at least one ground before it illustrating that Weakley, Methodist, and the nurses/techs were entitled to summary judgment as a matter of law, the trial court did not err in entering it. That summary judgment is affirmed.


Brian Quinn
Chief Justice