# Supreme Court of Texas

No. 22-0435

Dorothy Hampton,
*Petitioner*,

v.

Leonard Thome,
*Respondent*

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

JUSTICE BOYD, dissenting.

Suppose you tell your neighbor, "I will give you a hundred dollars if you cut my grass this week." Your neighbor doesn't cut your grass this week, but next week he asks you for the hundred dollars. "But you didn't cut my grass last week," you protest. "Well," says your clever neighbor, "you didn't say I *wouldn't* get the money if I *didn't* cut your grass!" True enough, you told him what he'd get if he cut your grass, but you didn't say he wouldn't get it if he didn't.

According to the Court, you owe your neighbor a hundred dollars. The Texas Medical Liability Act tolls its two-year statute of limitation for 75 days if a claimant gives timely notice "accompanied by" a

"specified" medical authorization form that identifies all of her health care providers. TEX. CIV. PRAC. & REM. CODE §§ 74.051(c), .052(a). But it doesn't say the claimant doesn't get the tolling if the claimant fails to give the notice, or if the notice isn't timely, or if the notice is not accompanied by the authorization form, or if the form fails to identify all of the claimant's health care providers. According to the Court, it simply "does not answer that question." *Ante* at 12 n.3. But of course, it does. If a claimant doesn't do what the statute says a claimant must do to get the tolling, that claimant doesn't get the tolling.

Dorothy Hampton alleges Dr. Leonard Thome negligently released her from the hospital before he should have. But Hampton sued Thome more than two years after her claim accrued. As a result, the Texas Medical Liability Act's statute of limitations bars her claim. *See* TEX. CIV. PRAC. & REM. CODE § 74.251(a).[1] Hampton argues, however, that the limitations period was tolled for 75 days after she gave Thome written notice of her claim, and that she filed suit within that 75-day grace period.

The Act provides that "[n]otice given *as provided in this chapter* shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice." *Id.* § 74.051(c) (emphasis added). Notice "as provided" in Chapter 74 "must be accompanied by the

---

[1] "Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . ." TEX. CIV. PRAC. & REM. CODE § 74.251(a).

authorization form for release of protected health information *as required under* Section 74.052." *Id.* (emphasis added). Section 74.052 requires "a medical authorization *in the form specified* by this section." *Id.* § 74.052(a) (emphasis added). It then "specifies" the form—not by describing it, but by *providing* it. In what can only be described as an uncommon statutory mandate, Section 74.052(c) states: "The medical authorization form *required* by this section shall be in *the following* form," and then sets forth the "specified" authorization form in its entirety. *Id.* § 74.052(c) (emphases added).[2]

By completing and providing the statutorily specified form, the claimant authorizes the defendant provider to "obtain and disclose," within specified parameters, specified health-care information for specified purposes. *Id.* A properly completed form requires any other medical provider who receives the form to produce the information specified in the form to the defendant provider. *Id.* By including numerous blanks and checkboxes, the form requires the claimant to provide her name and contact information, the name of the defendant provider who is authorized to obtain her records, the information she is authorizing to be disclosed, and the specific purposes for the disclosure. *Id.*

To specify the information she is and is not authorizing to be disclosed, the form requires the claimant to provide the names and addresses of three types of providers who possess her health-care information: (1) providers who have treated her for the injuries her

---

[2] The required form is reprinted as an Appendix to this opinion.

3

claim is based on, (2) providers who have treated her during the five years before she received those injuries, and (3) providers she is excluding from the authorization because she contends the information they have regarding her health care "is not relevant" to her claim. *Id.* For the providers she is excluding from the authorization, the form requires her not only to provide their names, but to either "[l]ist" the "inclusive dates of examination, evaluation, or treatment to be withheld from disclosure," or to "state 'none.'" *Id.*

By giving claimants the opportunity to list providers who possess only irrelevant information, the form permits "claimants to exclude irrelevant and therefore privileged information from the scope of a release" and "to act as gatekeepers of their own privileged health information." *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009). But a claimant who wishes to exclude a provider from the authorization cannot simply omit the provider's name from the form. *Id.* Instead, she must include the provider's name and "[l]ist" the specified information. TEX. CIV. PRAC. & REM. CODE § 74.052(c).

We have addressed Section 74.052(c) and the form it specifies in several prior cases. We have noted that by actually providing the form itself, the statute "detail[s]" the required authorization. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189 (Tex. 2012). It "prescribe[s]" not just the "form" the claimant must use, but also the "precise language" the form must include. *Collins*, 286 S.W.3d at 913. In other words, it prescribes both "the form and *content* of the required authorization form." *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 69–70 (Tex. 2011) (emphasis added) (citing TEX. CIV. PRAC. & REM.

4

CODE § 74.052(c)). As we explained just last term, Section 74.052(c) does not merely require a claimant to deliver a particular form, it requires a claimant "to provide a medical authorization form *identifying*" her medical providers. *In re Liberty Cnty. Mut. Ins. Co.*, 679 S.W.3d 170, 175–76 (Tex. 2023) (emphasis added).

We have already agreed that, to receive the benefit of the 75-day tolling period, a claimant "must provide both the statutorily required notice and the statutorily required authorization form." *Carreras*, 339 S.W.3d at 74. And the statutorily required authorization form requires the claimant to provide specific information, including the names of providers who have her health-care information and billing records, even if the claimant thinks the information they have is irrelevant to her claims. Yet as the Court acknowledges, Hampton never provided the statutorily required authorization form. Instead, she provided a form in which she identified only two of her medical providers, omitting eleven providers the statutorily specified form required her to identify.

The most the Court can generously suggest is that the form she provided "closely resembl[es] the one required by the Legislature," *ante* at 2, yet it concedes that her form was "incomplete," "erroneous," and had "deficiencies" because it "omitted some of the required health care providers and omitted a provision authorizing disclosure of information by [Hampton's] future health care providers." *Id.* at 2, 9. More specifically, it omitted several providers who treated her for the injuries on which she bases her claims against Thome and several providers who had treated her within the five years before those injuries. *See id.* at 5. She did not list those providers in the third category, claiming that the

5

information they had about her is not relevant to her claims. Instead, she simply failed to identify them at all, even though the statutorily specified form required her to list them.

The Court attempts to provide some text-based reasons why Hampton's form was good enough to trigger the 75-day tolling despite its failure to comply with the statutory requirements. First, the Court says, it's "the *notice*, not the medical authorization form, that triggers tolling." *Id.* at 11. But in fact, it's the notice "given as provided in this chapter" that triggers tolling and—as the Court concedes—"notice without *the required authorization form* is not '[n]otice given as provided in this chapter.'" *Id.* at 12 (emphasis added) (quoting *Carreras,* 339 S.W.3d at 72–73).

But, the Court asserts, the statute merely requires "*a*" medical authorization form, not a "*perfect*" one, and it does not "say how an incomplete or erroneous authorization form affects the tolling question." *Id.* at 11–12. But of course, it does. It requires the claimant to complete the form *expressly* set forth in the statute itself, and that form requires the claimant to fill in blanks to identify her medical providers, whether they treated her for her claim-based injuries during the five years before those injuries or for matters having no relevance to her claim at all. And it clearly states that tolling is available only if the claimant timely provides the required notice accompanied by the specified authorization. Under the statute's plain language, a claimant who fails to timely provide the required notice with the specified authorization form cannot rely on the tolling period.

As we have said, the statutorily specified form enables the defendant provider to have "access to the claimant's pertinent medical records." *Carreras*, 339 S.W.3d at 71. In fact, the statute expressly states that all parties are "entitled to obtain *complete* and unaltered copies of the [claimant's] medical records" from all other parties upon request, and it allows the claimant to provide the specified medical authorization "*in the form required* by Section 74.052" as a means of complying with that requirement. TEX. CIV. PRAC. & REM. CODE § 74.051(d) (emphases added). In her pleadings, the claimant must confirm that she has "*fully* complied" with Section 74.052's requirements. *Id.* § 74.051(b) (emphasis added). If she hasn't provided the information the statutorily specified form requires her to provide, she has not fully complied with Section 74.052's requirements.

Despite the statute's plain language and despite what we've previously said in *Texas West Oaks Hospital, Collins, Carreras*, and *Liberty County Mutual Insurance*, the Court meekly suggests today that Section 74.052 merely prescribes use of "'the *form* specified' by section 74.052," *ante* at 14, not the form's "detail[s]," *Tex. W. Oaks Hosp.*, 371 S.W.3d at 189, "precise language," *Collins*, 286 S.W.3d at 913, and "content" *Carreras*, 339 S.W.3d at 69–70, "identifying" the claimant's providers, *Liberty Cnty. Mut. Ins.*, 679 S.W.3d at 175–76. But of course, it does. The Court acknowledges, as it must, "the possibility that a document proffered as a medical authorization form may be so grossly deficient on its face that it could never genuinely be called 'a medical authorization in the form specified by this section.'" *Ante* at 15 (quoting TEX. CIV. PRAC. & REM. CODE § 74.052(a)). But if all Section

7

74.052 requires is delivery of the "form" specified in Section 74.052(c), one that fails to identify *any* providers is as compliant as one that fails to identify a dozen, or a few, or even one. If, as the Court suggests, a grossly deficient form is not good enough but a slightly (or moderately?) deficient form is, courts will ultimately be required to draw a line somewhere between the two and figure out which side of that line any particular form falls on. Which means, of course, the Court's "bright-line" rule is far blurrier than the Court is willing to admit. *Id.* at 15.

Still purporting to rely on the statute's text, the Court also suggests that the statute provides for "temporary abatement" as the sole "remedy for the plaintiff's failure to disclose providers as required." *Id.* at 11.[3] That assertion concedes, of course, that the statute "require[s]" claimants to "disclose providers," contradicting the Court's assertion that the statute merely requires delivery of the "form." But more importantly, we have already rejected the Court's argument about abatement.

---

[3] The statute provides for temporary abatement in two circumstances. First, a claimant's failure to provide the specified authorization form with the notice "shall abate all further proceedings" until sixty days after the provider defendant receives "the required authorization." TEX. CIV. PRAC. & REM. CODE § 74.052(a). And second, if the claimant provides the required authorization but later modifies or revokes it, the provider defendant may choose to abate all proceedings until sixty days after the claimant provides a "replacement authorization" that complies "with the form specified" by Section 74.052(c). *Id.* § 74.052(b). If, as the Court contends, all that Section 74.052(c) requires is use of "the *form* specified" without regard to its contents, *ante* at 14, it would not be possible for a claimant to provide an "authorization required by this section" and then modify it and replace it with "the form specified by this section." The statute's reference to modification of the required form, in other words, must necessarily refer to the required contents, and not merely to the "form."

8

The claimants in *Carreras* made the same argument the Court makes today: that "service of an authorization form is unnecessary to toll the statute of limitations because a separate remedy—abatement— is provided for failure to accompany notice with an authorization form." *Carreras*, 339 S.W.3d at 73. We expressly rejected that argument in *Carreras*, explaining that the abatement provisions apply only when a claimant provides notice of her claim before limitations runs, so that tolling is neither necessary nor required:

> [A]batement has a use in situations in which the tolling provision is not at issue. If notice is provided without an authorization well within the statute of limitations, and the case could be filed sixty days later and still fall within the limitations period, the defendant's statutory remedy is to halt proceedings until an authorization form is received. The abatement remedy fulfills that purpose.

*Id.* at 73–74.

As the Court notes, we addressed in *Carreras* the issue of whether tolling is available when the claimant fails to serve an authorization form at all, as opposed to an authorization "as required" by Section 74.052(c). But with regard to the statute's abatement provisions, that distinction is irrelevant. Section 74.052 treats the failure to provide an authorization form the same as the provision of an authorization form that requires modification. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.052(a), (b). Both warrant abatement. In either case, the claimant's failure to provide a form or her provision of an incomplete form results in abatement only if the claimant provided the notice and filed suit

9

before the two-year limitations period expired, making the tolling provision irrelevant. *See Carreras*, 339 S.W.3d at 73. If tolling is at issue—because the plaintiff relied on the 75-day tolling and filed after limitations expired but served an incomplete or erroneous medical authorization form—abatement would not be a remedy. *See id.* at 73–74. Instead, as would occur with a failure to provide any medical authorization at all, tolling would not be available. *See id.* at 72.

Beyond its text-based arguments, the Court relies on several policy- or purpose-based arguments. But we are dealing with a *statute* of limitations, not a common-law requirement we may revoke or modify based on policy preferences. None of the Court's policy concerns justifies a judicial rewriting of the statute or ignoring the requirements of "the form specified" in Section 74.052(c). Maybe "Texas law" (meaning this Court? Texas courts generally? The Legislature?) "favors bright-line rules that enable parties and courts to know with certainty—as early in the litigation as possible—whether the suit is time-barred." *Ante* at 3. But even if so, that's irrelevant to the question of whether this statute imposes the kind of "bright-line rule" the Court prefers. The same is true about the Court's preference that limitations periods should be "a threshold matter that should, whenever possible, be established with clarity at the outset." *Id.* at 3. Maybe they should be, but whether this one is depends on the statute's requirements, not on what we think it should (or should not) require.

I suspect that, as a Court, we do in fact prefer to minimize "satellite" and "protracted" litigation and appeals, and we may even think limitations deadlines "should always be calculable with certainty

10

at the outset of the case." *Id.* at 3, 10–11. Considering the line-drawing the Court's approach requires to determine whether a particular authorization form is "deficient" enough, however, its approach does little to promote those purposes. Nor does it promote the purposes we've *previously* said the authorization requirement promotes—to "provide[] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage," and to "reduc[e] the costs of health care liability claims" by enabling provider defendants to obtain relevant medical records from non-party health care providers without having to rely on the "use of subpoenas or other formal mandatory processes." *Collins*, 286 S.W.3d at 916–18. Section 74.052 cannot promote those purposes if it doesn't require a claimant to complete "the form specified" by identifying her medical providers in the blanks the specified form provides for that purpose.

As the Court acknowledges, statutes of limitations can indeed be harsh. *Ante* at 7. And as applied to this case, this one would be if we applied the statute as written. By providing the 75-day tolling period, the Legislature offers some leeway for some claimants, but only those who are willing and able to provide the information the statutorily specified authorization form requires. A claimant who is unwilling or unable to provide the information does not lose her claim for that reason. She simply loses the ability to rely on the 75-day tolling period and must bring her claims within the applicable statute of limitations, like most all other claimants must do. As the Court acknowledges, Hampton's dilemma "could, it appears, have easily been avoided altogether by a slightly earlier filing." *Ante* at 7.

11

For these reasons, I respectfully dissent.

_____

Jeffrey S. Boyd
Justice

**OPINION FILED:** March 8, 2024

# APPENDIX

AUTHORIZATION FORM FOR RELEASE OF PROTECTED HEALTH

INFORMATION

Patient Name:_____

Patient Date of Birth:_____

Patient Address:_____

Street_____ City, State, ZIP

Patient Telephone:_____

Patient E-mail:_____

NOTICE TO PHYSICIAN OR HEALTH CARE PROVIDER: THIS AUTHORIZATION FORM HAS BEEN AUTHORIZED BY THE TEXAS LEGISLATURE PURSUANT TO SECTION 74.052, CIVIL PRACTICE AND REMEDIES CODE. YOU ARE REQUIRED TO PROVIDE THE MEDICAL AND BILLING RECORDS AS REQUESTED IN THIS AUTHORIZATION.

A. I, _____ (name of patient or authorized representative), hereby authorize _____ (name of physician or other health care provider to whom the notice of health care claim is directed) to obtain and disclose (within the parameters set out below) the protected health information and associated billing

records described below for the following specific purposes (check all that apply):

[ ] To facilitate the investigation and evaluation of the health care claim described in the accompanying Notice of Health Care Claim.

[ ] Defense of any litigation arising out of the claim made the basis of the accompanying Notice of Health Care Claim.

[ ] Other - Specify:_____

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as written and electronic and is specifically described as follows:

1. The health information and billing records in the custody of the physicians or health care providers who have examined, evaluated, or treated _____ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health Care Claim.

14

Names and current addresses of treating physicians or health care providers:

1._____

2._____

3._____

4._____

5._____

6._____

7._____

8._____

This authorization extends to an additional physician or health care provider that may in the future evaluate, examine, or treat _____ (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim only if the claimant gives notice to the recipient of the attached Notice of Health Care Claim of that additional physician or health care provider;

2. The health information and billing records in the custody of the following physicians or health care providers who have examined, evaluated, or treated

_____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim.

Names and current addresses of treating physicians or health care providers, if applicable:

1._____

2._____

3._____

4._____

5._____

6._____

7._____

8._____

C. Exclusions

1. Providers excluded from authorization. The following constitutes a list of physicians or health care providers possessing health care information concerning _____ (patient) to whom this authorization does not apply because I contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional

16

condition of _____ (patient) arising out of the claim made the basis of the accompanying Notice of Health Care Claim. List the names of each physician or health care provider to whom this authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure, or state "none":

1._____

2._____

3._____

4._____

5._____

6._____

7._____

8._____

2. By initialing below, the patient or patient's personal or legal representative excludes the following information from this authorization:

_____ HIV/AIDS test results and/or treatment

_____ Drug/alcohol/substance abuse treatment

17

_____ Mental health records (mental health records do not include psychotherapy notes)

_____ Genetic information (including genetic test results)

D. The persons or class of persons to whom the patient's health information and billing records will be disclosed or who will make use of said information are:

1. Any and all physicians or health care providers providing care or treatment to _____ (patient);

2. Any liability insurance entity providing liability insurance coverage or defense to any physician or health care provider to whom Notice of Health Care Claim has been given with regard to the care and treatment of _____ (patient);

3. Any consulting or testifying experts employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

18

4. Any attorneys (including secretarial, clerical, experts, or paralegal staff) employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

5. Any trier of the law or facts relating to any suit filed seeking damages arising out of the medical care or treatment of _____ (patient).

E. This authorization shall expire upon resolution of the claim asserted or at the conclusion of any litigation instituted in connection with the subject matter of the Notice of Health Care Claim accompanying this authorization, whichever occurs sooner.

F. I understand that, without exception, I have the right to revoke this authorization at any time by giving notice in writing to the person or persons named in Section B above of my intent to revoke this authorization. I understand that prior actions taken in reliance on this authorization by a person that had permission to access my protected health information will not be affected. I

19

further understand the consequence of any such revocation as set out in Section 74.052, Civil Practice and Remedies Code.

G. I understand that the signing of this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

H. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by federal HIPAA privacy regulations.

Name of Patient

_____

Signature of Patient/Personal or Legal Representative

_____

Description of Personal or Legal Representative's Authority

_____

Date

_____